UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL L. ANKUM,

    Plaintiff,

 v.

NANCY A. BERRYHILL,

    Defendant.

CASE NO. C16-1374 TSZ-BAT

**REPORT AND RECOMMENDATION**

  Plaintiff Michael Ankum appeals the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred by misevaluating (**1**) the medical evidence and (**2**) the lay testimony of his case managers. Dkt. 13, at 2. The Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

  Mr. Ankum is currently 57 years old, completed 11th grade, and has worked as a construction worker and cleaner. Tr. 43, 65–66, 240–42. In July 2013, he applied for benefits, alleging disability as of July 1, 1999. Tr. 203–18, 236-248. His applications were denied initially and on reconsideration. Tr. 80–91, 106–19. At his 2014 hearing, Mr. Ankum revised his alleged date of disability to **January 1, 2013,** to eliminate concerns about time periods in which he

worked and received unemployment benefits. Tr. 41. In a January 2015 decision, the ALJ found Mr. Ankum to be not disabled. Tr. 17–31. Because the Appeals Council denied Mr. Ankum's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–4.

## THE ALJ'S DECISION

The ALJ determined that Mr. Ankum meets the insured status requirements for his disability application through September 30, 2017. Tr. 19. Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one:** Mr. Ankum had not engaged in substantial gainful activity since **January 1, 2013**, the alleged onset date of disability.
>
> **Step two:** Mr. Ankum had the following severe impairments: **depressive disorder**.
>
> **Step three:** His impairment/combination of impairments did not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity:** Mr. Ankum has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He can understand, remember, and carry out simple routine and repetitive tasks in a routine and predictable work environment with occasional contact with coworkers and supervisors and no contact with the general public.
>
> **Step four:** Mr. Ankum could not perform any past relevant work.
>
> **Step five:** As there are jobs that exist in significant numbers in the national economy that Mr. Ankum can perform, he is not disabled.

Tr. 19–31.

## DISCUSSION

The Court will reverse an ALJ's decision only if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *See Molina v. Astrue*, 674 F.3d 1104,

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

1110 (9th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted). Moreover, the Court will reverse the ALJ's decision only if the claimant demonstrates that the ALJ's error was harmful. *Id.* Mr. Ankum contends that the ALJ misevaluated (**1**) the medical testimony and (**2**) the lay testimony. The Court recommends affirming because the ALJ supported her decision with substantial evidence and did not commit harmful legal error.

1. **Medical Evidence**

Mr. Ankum contends that the ALJ improperly discounted the opinions of (**a**) examining psychologist Kenneth Hapke, Ph.D.; (**b**) examining psychologist James Czysz, Ph.D.; and (**c**) non-acceptable medical source Sonia Nikolova, ARNP, of Downtown Emergency Services Clinic ("DESC"). Mr. Ankum does not, however, challenge the ALJ's adverse credibility determination, which the ALJ cited as one of several significant reasons for discounting the opinions of Dr. Hapke, Dr. Czysz, and ARNP Nikolova. The Court finds that Mr. Ankum has failed to undermine the ALJ's rational interpretation of the medical evidence.

The ALJ gave significant weight to the opinions of nonexamining psychologists Kent Reade, Ph.D., and Gary L. Nelson, Ph.D. Tr. 27 (citing Tr. 70–79; 81–91; 93–105; 107–19). Drs. Reade and Nelson determined that Mr. Ankum had depressive symptoms, but given the inconsistencies in the medical evidence they could not make reliable conclusions regarding the presence of a medically determinable impairment. Tr. 76, 88, 102, 116. The ALJ disagreed and found that the medical evidence was reliable enough to find Mr. Ankum's depression to be a severe impairment. Tr. 27. The ALJ agreed, however, with Drs. Reade and Nelson that Mr.

Ankum could perform at least simple repetitive tasks and that numerous discrepancies in the record undermined the credibility of his alleged limitations. *Id.* The ALJ noted that Drs. Reade and Nelson explained that Mr. Ankum's presentation differed depending on the setting and that the scores for tests administered by Dr. Hapke—the Wechsler Adult Intelligence Scale, Fourth Edition IV (WAIS-IV) and Wechsler Memory Scale IV (WMS IV)—were not valid and were not representative of his intellectual abilities, memory skills, or functional capacity. Tr. 26; *see* Tr. 76, 88, 102, 116.

Mr. Ankum contends that the ALJ gave too much weight to the nonexamining opinions of Drs. Reade and Nelson and not enough weight to the opinions of examining psychologists Drs. Hapke and Czysz and of ARNP Nikolova.

### (a) Examining Psychologist Dr. Hapke

As a general rule, more weight should be given to the opinions of examining doctors such as Drs. Hapke and Czysz than to the opinions of doctors such as Drs. Reade and Nelson who did not examine or treat Mr. Ankum. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.1995) (upholding the ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results). Mr. Ankum argues that the ALJ failed to cite specific and legitimate reasons for giving only partial weight to the consultative evaluation by examining psychologist Dr. Hapke. The Court disagrees.

In October 2013, Dr. Hapke examined Mr. Ankum and concluded that his ability to be gainfully employed is significantly compromised by his symptoms of unspecified neurocognitive disorder, secondary to a history of traumatic brain injury and chronic substance abuse. Tr. 432. Dr. Hapke noted that Mr. Ankum's thinking is very concrete; overall, his mood is depressed; his general knowledge is low average to borderline; his insight is low average; he is guarded and suspicious; and he avoids social interactions. *Id.* In addition, Dr. Hapke observed that Mr. Ankum has significant impairment of aspects of his auditory and delayed memory functions. *Id.*

The ALJ gave partial weight to Dr. Hapke's psychological evaluation. First, the ALJ noted that Dr. Hapke's conclusions were inconsistent with Dr. Hapke's own determinations that the results from the administered tests were invalid and were inconsistent with the medical evidence. *Id.* For example, Dr. Hapke opined that the WAIS-IV and WMS-IV scores were not valid and were not an accurate representation of Mr. Ankum's functional capacity. Tr. 27; *see* Tr. 430–31. Dr. Hapke noted that Mr. Ankum "possesses intellectual abilities considerably higher than those measured by" the WAIS-IV. Tr. 430. Similarly, Dr. Hapke found that the results of the WMS-IV were not an accurate representation of his memory skills and capacity because, among other reasons, "he was observed to concentrate and give good effort during some subtests; he was erratic and care[]less while completing others. At times, his behavior could be described as bizarre and illogical." Tr. 431; *see, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 951 (9th Cir. 2002) (noting that the ALJ properly discredited a treating physician because the one-hour evaluation relied almost entirely on subjective information, and when a claimant exaggerates symptoms, the results cannot be valid). Second, the ALJ found that Dr. Hapke's opinion was inconsistent with Mr. Ankum's daily activities. Tr. 27–28; *see, e.g., Morgan v. Commissioner of the SSA*, 169 F.3d 595, 601–02 (9th Cir. 1999) (affirming that the claimant's inconsistent daily

activities properly served as a specific and legitimate reason for rejecting an examining doctor's opinion). For example, although Dr. Hapke concluded that Mr. Ankum avoids social interactions, Tr. 432, Mr. Ankum reported that every Saturday and Sunday he attended church and met with his Bible-study group of seven or eight people, Tr. 50; and his caseworker noted that he "often" saw Mr. Ankum "socializing/speaking w/ others," Tr. 261. Third, the ALJ engaged in a lengthy discussion of why she discredited his self-reports to providers about the severity of his mental-health symptoms. Tr. 25–26. The ALJ noted that Mr. Ankum sought medical treatment infrequently and usually for physical symptoms, at which time he was fully oriented with appropriate behavior and normal mood and thought content. Tr. 25 (citing Tr. 364, 367, 379, 383, 398, 458, 471–72, 479, 481–82, 485); however, when seen for psychological evaluations, Mr. Ankum alleged debilitating psychiatric symptoms, Tr. 25 (citing Tr. 369–73; 428–33; 503–05). The ALJ concluded that "[s]uch inconsistencies . . . may not be the result of a conscious intention to mislead, but it suggests the information he provided may not be entirely reliable, a fact that undermines his overall credibility." Tr. 25. The ALJ noted that Mr. Ankum tended to refuse psychiatric medication, but when he did take them, the medications were at a low dosage level and resulted in symptom abatement. Tr. 25 (citing Tr. 233–34, 367, 429, 434, 436, 448, 483, 489–96). The ALJ observed that Mr. Ankum's work history was inconsistent prior to the alleged onset day and that he stopped working for reasons unrelated to the allegedly disabling impairments. Tr. 26. For example, Mr. Ankum told providers that he stopped working in 1999, after he was in a motor accident, Tr. 369, 428, yet his earnings records confirmed work activity and earnings, sometimes at substantial gainful activity levels, in 2001, 2002, and 2004 through 2014. Tr. 26 (citing Tr. 222). At the hearing, Mr. Ankum explained that he last worked for several months in early 2013, and stopped working there only because his criminal record

precluded his continued employment. Tr. 44–45. The ALJ also discredited Mr. Ankum's testimony because he received unemployment benefits in 2012 and 2013, thereby holding himself out as physically capable of working and actively seeking work during a period in which he also alleged disabling impairments. Tr. 26–27.

The ALJ cited specific and legitimate reasons to discount Dr. Hapke's examining opinion: internal inconsistency and inconsistency with other medical evidence; contradiction by Mr. Ankum's daily activities; and Mr. Ankum's unreliable credibility when reporting his mental symptoms to care providers. Tr. 27–28. Mr. Ankum's arguments to the contrary suggest only an alternative interpretation of Dr. Hapke's opinion and the medical evidence. Dkt. 13, at 5–8. For example, Mr. Ankum notes that, with respect to administering the Comprehensive Trail-Making Tests ("CTMT"), Dr. Hapke stated: "Although there was no direct evidence of malingering or intention to create a negative impression, the claimant's performance is not seen as an accurate measurement of impairment; it is more likely evidence of psychotic illness." Mr. Ankum emphasizes that Dr. Hapke opined that the CTMT results suggested psychotic illness, not a greater functional capacity or malingering. Dkt. 13, at 6. Yet no doctor, including Dr. Hapke, diagnosed a psychotic illness; Mr. Ankum does not argue that the ALJ failed to consider valid evidence of a psychotic illness; and the ALJ did not cite Dr. Hapke's interpretation of the CTMT results as a reason for discounting his opinion. *See* Tr. 27–28. Moreover, it should be noted that Mr. Ankum does not undermine at all the ALJ's adverse credibility determination.[3] The ALJ's

---

[3] In challenging the ALJ's assessment of the medical evidence, plaintiff's counsel suggests that the ALJ should not have cited to Mr. Ankum's handwritten, coherent jail kites as an example of his inconsistent presentation to different providers and as a reason for discrediting his testimony. Dkt. 13, at 3. According to counsel:

> [I]t appears that the handwriting of the staff at the corrections institution below that of the kite is similar to the kite handwriting.

REPORT AND RECOMMENDATION - 7

interpretation of Dr. Hapke's opinion and the medical evidence was rational and should be upheld.

### (b) Examining Psychologist Dr. Czysz

Mr. Ankum next argues that the ALJ failed to cite specific and legitimate reasons for giving no weight to the DSHS evaluation form completed by examining psychologist Dr. Czysz. The Court disagrees.

In June 2013, Dr. Czysz examined Mr. Ankum and diagnosed depressive disorder and cognitive disorder. Tr. 370. Dr. Czysz opined that Mr. Ankum had **marked** limitations for a number of basic work activities: understanding, remembering, and persisting in tasks by following detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; learning new tasks; adapting to changes in a routine work setting; communicating and performing effectively in a work setting; completing a normal work day and work week without interruptions from psychologically based symptoms; and setting realistic goals and planning independently. Tr. 371. Dr. Czysz opined that Mr. Ankum suffered from **moderate** limitations with respect to all other basic work activities. *Id.* Dr. Czysz opined that Mr. Ankum was not within normal limits with respect to thought process and content; memory; fund of knowledge; concentration; abstract thought; and insight and judgment. Tr. 372–73. With respect to memory,

---

AR 342. This would suggest that the Plaintiff had assistance in completing the kites.

*Id.* This is an unsupported speculation. There is more than one jail kite, and all of them are fluidly written in the first person by Mr. Ankum. *See, e.g.*, Tr. 342–45. Mr. Ankum never testified that he had assistance in writing his kites and counsel never raised such an argument before the ALJ. It was both rational and reasonable for the ALJ to presume that Mr. Ankum personally wrote the many kites that he also signed as attestations about his medical needs.

Dr. Czysz noted that "Mr. Ankum's score on REY 15 item test to determine symptom validity was 9/15 suggesting reasonably good effort and lack of dissimulation."[4]

The ALJ gave no weight to Dr. Czysz's evaluation because the assessed limitations were out of proportion to the other medical evidence in the record and because Dr. Czysz relied heavily on Mr. Ankum's self-reported symptoms, which the ALJ discredited. The ALJ noted, for example, that Mr. Ankum's presentation to Dr. Czysz was not reflective of his actual abilities or functioning, as exemplified by the invalid results on tests administered by Dr. Hapke, Tr. 28 (citing Tr. 428–33), and the way he presented without noticeable mental-health problems to providers outside of the mental-health realm, Tr. 28; *see* Tr. 24–25; *see, e.g.*, 334–61. Similarly, Dr. Czysz appeared to accept Mr. Ankum's personal account that his cognitive impairment stemmed from suffering a head injury in 1999 that caused him to engage only in sporadic work from that point forward even though he continued to work and earn money, at times reaching substantial gainful activity levels, for years after that date. *See* Tr. 26, 369.

The Court finds that the ALJ cited specific and legitimate reasons to give no weight to Dr. Czysz's examining opinion. As the ALJ noted elsewhere in her decision, in April 2013, the King County Jail Health Services ("KCJHS") screening nurse noted no mental health issues, Tr. 357–58; Mr. Ankum's KCJHS medical notes and medical kites do not suggest any difficulty in discussing his symptoms or understanding treatment recommendations, and he did not request mental-health treatment while in jail, Tr. 342–45; and at his Harborview Medical Center

---

[4] The Rey-15 is a visual recall task in which 15 items are presented for 10 seconds in a 3 x 5 array. The stimuli are removed and the participant is immediately asked to reproduce the stimuli. Poor performance is said to be suggestive of malingering when **less than 9 times** are correctly reproduced. Esther Strauss, et al., A COMPENDIUM OF NEUROPSYCHOLOGICAL TESTS (3d ed. 2006) 1166–71. The authors note that the Rey-15 "appears to be sensitive to genuine cognitive dysfunction . . . and insufficiently sensitive to malingering." *Id.* at 1170 (citations omitted).

REPORT AND RECOMMENDATION - 9

("HMC") visits, he repeatedly checked in with physical issues, denied mental-health issues, and stated having no interest in mental-health treatment, Tr. 362–68; 377–427; 457–488; *see* Tr. 24. Mr. Ankum told his social worker that he has never been diagnosed with traumatic brain injury, Tr. 232; a KCJHS nurse remarked that although Mr. Ankum reported that he incurred a scar on his forehead from a motor vehicle accident in 1998 or 1999, there were "no sequelae" (i.e., medical consequences) from the injury, Tr. 339; and there is no contemporaneous evidence that the 1999 car accident caused the cognitive impairment that Dr. Czysz presumed existed. Moreover, Mr. Ankum does not contest the ALJ's adverse credibility determination. Although Mr. Ankum argues otherwise, it was rational for the ALJ to reject Dr. Czysz's opinion as inconsistent with the medical evidence and overly dependent upon Mr. Ankum's unreliable self-reports. *See, e.g.*, *Thomas*, 278 F.3d at 951.

### (c) Non-Acceptable Medical Source ARNP Nikolova

Only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Nurse practitioners such as ARNP Nikolova are defined as "other sources," § 404.1513(d), and are not entitled to the same deference, *see* § 404.1527; SSR 06–03p. The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" See *Turner v. Commissioner of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir.2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)). Mr. Ankum argues that the ALJ failed to cite germane reasons for giving no weight to the July 2014 mental assessments completed by ARNP Nikolova. The Court disagrees.

In July 2014, ARNP Nikolova opined that Mr. Ankum had severe, marked, or moderate mental limitations in 17 out of 20 domains and concluded that he had extreme difficulties in

maintaining concentration, persistence, or pace; moderate difficulties in the activities of daily living; and mild difficulties in maintaining social relationships. Tr. 501–05. The ALJ gave no weight to ARNP Nikolova's July 2014 assessments because they were inconsistent with the record and she did not provide evidence in support of the noted limitations. Tr. 28. The ALJ noted, for example, that the July 2014 assessments stated limitations out-of-proportion with ARNP Nikolova's June 2014 clinical opinion that Mr. Ankum had enjoyed improvement in his symptoms, including increased energy and motivation, and motivation to engage in more activities with others with reduced depression and anxiety. Tr. 28 (citing Tr. 489).

The Court finds that the ALJ cited a germane reason for rejecting ARNP Nikolova's July 2014 assessments: inconsistency with her own clinical notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). For example, from November 2013 to January 2014, ARNP Nikolova noted a logical and coherent thought process with "some latency," Tr. 495–500; but from March to June 2014, ARNP Nikolova noted "no latency" and referred to Mr. Ankum's concentration as "focused." Tr. 489–94. These March to June 2014 notes conceivably contradict ARNP Nikolova's July 2014 assessments that Mr. Ankum suffered from extreme difficulties in maintaining concentration. *Compare* Tr. 489–94 *with* Tr. 504. It was rational for the ALJ to give no weight to ARNP Nikolova's July 2014 assessments.

2. **Lay Testimony**

An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Bayliss*, 427 F.3d at 1218. Mr. Ankum argues that the ALJ failed to give germane reasons for giving little weight to the testimony of David Anderson, his case manager at the shelter, and the testimony of Laura Marini, his case manager. The Court disagrees.

### (a) Shelter Case Manager Mr. Anderson

Along with another reason, the ALJ discounted Mr. Anderson's lay testimony as inconsistent with the record. Tr. 29. The ALJ noted that Mr. Anderson claimed that Mr. Ankum had difficulty completing forms and appeared to have difficulty or inability to read and understand. *Id.* (citing Tr. 262). The ALJ observed that Mr. Ankum's KCJHS medical kites belied that claim. *Id.* (citing Tr. 342–45). The ALJ cited a germane reason for giving little weight to Mr. Anderson's lay testimony.

### (b) Case Manager Ms. Marini

The ALJ discounted Ms. Marini's lay testimony as internally inconsistent and inconsistent with the medical record. The ALJ noted that Ms. Marini stated that Mr. Ankum could write only simple notes and needed her to explain things; however, Mr. Ankum did not appear to have any difficulties seeking help and specifying his problems in the KCJHS medical kites, and while in jail he did not report mental problems to the providers who saw him for physical issues. Tr. 29. The ALJ also noted that although Ms. Marini testified that Mr. Ankum had anxiety around new people, she also admitted that she never saw him around other people, which suggested that she relied on Mr. Ankum's unreliable self-reports to support this conclusion. Tr. 29, 60–61. The ALJ cited germane reasons for giving little weight to Ms. Marini's lay testimony.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **June 20, 2017.** If no

objections are filed, the Clerk shall note the matter for June 23, 2017, as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 6th day of June, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13